Koppers Company v. Commissioner.
Koppers Co. v. Commissioner
Docket No. 108500.
United States Tax Court
1944 Tax Ct. Memo LEXIS 346; 3 T.C.M. (CCH) 204; T.C.M. (RIA) 44059; February 29, 1944
*346 O. H. Chmillon, C. P. A., John E. McClure, Esq., and E. L. Updike, Esq., 920 Southern Bldg., Washington, D.C, for the petitioner. William A. Schmidt, Esq., for the respondent. LEECH Memorandum Findings of Fact and Opinion LEECH, Judge: Respondent has determined a deficiency in income tax for the calendar year 1937 in the sum of $264,932. Petitioner, by amendment to its petition, claims an overpayment of $28,000. The parties filed a stipulation of facts. In addition, testimony was taken directed wholly to one question of fact under one of the issues. We find the facts as stipulated. The fact established by testimony is found hereinafter under the issue to which it pertains. The issues, facts pertaining to each as found, and opinion upon each issue, will be set out separately. General Facts The petitioner was incorporated under the laws of Delaware in 1927 under the name of Utility Service and Investment Corporation. By charter amendments its name was later changed in that year to Koppers Gas and Coke Company and, in 1936, to Koppers Company. Its income tax return for the calendar year 1937 was filed with the collector of internal revenue for the 23rd district of Pennsylvania. For *347 the years 1933 to 1937, inclusive, petitioner kept its books and made its returns on an accrual basis of accounting. Issue 1 Findings of Fact Petitioner, in 1937, discharged certain liabilities assessed against it as transferee or transferee of a transferee, representing unpaid income and capital stock taxes of several transferor corporations whose assets it had received and whose liabilities it had assumed. It also paid interest on such liabilities in the total amount of $51,918.81. In its return for 1937, it deducted such interest in computing net income. In determining the contested deficiency the respondent disallowed that deduction. Opinion The stipulation sets out the dates upon which petitioner acquired the several properties and assets, the amount of the deficiency, each deficiency and the period over which such interest accrued. There is no dispute as to the facts, the sole question being whether the payment by petitioner was interest upon its own indebtedness, and deductible as such, [1] or interest upon the indebtedness of its transferors and thus not so deductible. The question is thus the same and presented upon facts *348 identical with those in a proceeding by this same taxpayer under Docket No. 110247, involving a deficiency for 1938, and recently decided by us. . In accordance with the rule there announced we hold that only so much of the interest paid by petitioner upon the tax liability of each of its several transferors as accrued subsequent to the receipt of assets of such transferor, constituted interest upon its indebtedness and is properly deductible by petitioner. Issue 2 Findings of Fact On February 5, 1936, the Koppers Construction Company, a wholly owned subsidiary of petitioner, owned $704,200 face amount of three, four and five year notes of the Davison Coke & Iron Company and $2,800 of unpreferred claims against that company. The cost to the Koppers Construction Company of these notes and claims was their face amount. On February 5, 1936, the Davison Coke & Iron Company was reorganized under 77B of the Bankruptcy Act and the Koppers Construction Company on that date received in exchange for the aforesaid notes and claims, ten year convertible debenture bonds of the reorganized company equal in face value to the amount of *349 such notes and claims, and also 14,140 shares of common stock of the creditor company issued under the reorganization plan. The Koppers Construction Company, in entering this transaction upon its books, assigned the entire cost of $707,000 to the debenture bonds received in that face amount and treated the common stock as having no fair market value or cost. On June 18, 1936, the Koppers Construction Company sold 50,457 shares of the common stock of the reorganized Davison Coke & Iron Company for $300,000. These shares included the 14,140 shares received on February 5, 1936 as above set out. In computing the gain or loss on this sale these 14,140 shares were treated by that company as having no cost basis and the entire proceeds of their sale were reported as income. Respondent did not disturb this treatment. On June 26, 1936, the Koppers Construction Company received $33,000 in cash in redemption of $33,000 face amount of the ten year debenture bonds of Davison Coke & Iron Company, heretofore referred to, and in determining the income tax liability of the selling company for that year that company and respondent considered the cost basis of such bonds to be their face amount. *350 On October 1, 1936, the Koppers Construction Company distributed all of its assets to petitioner, its sole stockholder. No gain or loss was recognized on such distribution under section 112 (b) (6) of the Revenue Act of 1936 and petitioner received the remaining ten year debenture bonds then distributed at the cost basis of its transferor. On or about March 16, 1937, these remaining ten year debentures of the Davison Coke & Iron Company, in the face amount of $674,000, were sold by petitioner for $674,000 cash. In its income tax return for that year petitioner reported no gain or loss on this sale, treating it as one made at cost. Respondent, in determining the contested deficiency, has computed a gain of $121,320 on this sale by using a cost basis of $820 for each $1,000 face amount of debenture bonds. The debenture bonds of the Davison Coke & Iron Company, above referred to, when received by the Koppers Construction Company, had a fair market value equal to their face value. Opinion We have hereinabove found the debenture bonds in question to have been worth par when received by petitioner's transferor. [2] We think this conclusion is amply supported. The reorganization of the *351 Davison Coke & Iron Company resulted in the funding of that company's indebtedness and manifestly improved greatly its condition. We think from all the circumstances that the bonds, secured as they were and paying five per cent interest, were worth their face value when received. There were no sales of the bonds immediately after their receipt and the only evidence of a lesser value is the stated opinion of one witness. This testimony is difficult to reconcile with the evidence of the improved condition of the Davison Coke & Iron Company and the value of its properties. The opinion is hardly reasonable in view of the fact that within six months $33,000 of the bonds received by petitioner's transferor were redeemed at par and the entire balance of the bonds, in a very much larger amount, were sold in the next year at par. *352 We think petitioner's transferor was correct in treating these debenture bonds as having a cost to it equal to their face value. This treatment was approved by respondent in the case of the $33,000 in bonds redeemed in the year of their receipts. Although under the stipulated facts it is evident that the reorganization of the Davison Coke & Iron Company was a statutory reorganization, there is no indication that the notes and unsecured claims held by petitioner's transferor and in exchange for which the debenture bonds and stock were issued to it, were securities within the purview of section 112 (b) (3) of the Revenue Act of 1936. See , and cases therein cited. Accordingly, under that section this transaction was taxable. The bonds were received at their then fair market value, which we have found was their face value. Having been sold at par there was no gain realized and petitioner is sustained upon this issue. The failure of petitioner's transferor to enter the stock received at its value and compute a gain thereon, if, in fact it then had a fair market value, is offset by the fact that it sold this stock *353 in the year of its receipt and treated as income the total amount received. Issue 3 Findings of Fact Petitioner, during the year 1936, owned common stock of the Brooklyn Union Gas Company and preferred stock of the Eastern Gas and Fuel Associates. These corporations declared dividends in 1936, payable in 1937, to stockholders of record on a date in 1936. They similarly declared dividends in 1937, payable in 1938, to stockholders of record on a date in 1937. These dividends were received after the close of the years 1936 and 1937. Petitioner, in 1937, received a dividend from a subsidiary, the Esmont Company. This company had acquired from the Tar Products Corporation, another subsidiary of petitioner, certain common stock of the Brooklyn Union Gas Company, above referred to, after the record holding date for dividend purposes in 1936 and prior to the payment date in January 1937. The dividend received by petitioner from the Esmont Company was treated by respondent as having been paid wholly from earnings and profits of that company. However, if the dividend paid by Brooklyn Union Gas Company in 1937 upon its stock owned at that time by the Esmont Company was accruable by Tar *354 Products at the close of 1936 and therefore income to it and not the Esmont Company, then a portion of the dividend distribution by the Esmont Company to petitioner represented a return of capital to petitioner, who would be entitled to reduce this reported dividend by $8,566.59. In determining the deficiency respondent has treated all the dividends in question to be accruable in the years when paid and received. Opinion The question here presented is the same as that involved in , reversing our decision in . The parties have stipulated that our decision upon this issue should be in accordance with the final decision in the aforementioned case. The decision in that case having become final, we hold, under the stipulation of the parties, that the dividends in question were income of the stockholder in each instance in the year in which received. It follows that the action of the respondent with respect to these dividends in determining the deficiency is approved. Issue 4 Findings of Fact Petitioner, during 1933, *355 was the owner of all the stock of the Walloon Realty Company which was the owner of certain real estate in New York City. This real estate was condemned in that year by the city for public use in connection with the extension of Grand Central Parkway and the widening of Astoria Boulevard. Actual possession of the property was taken by the city on November 2, 1933 when title to the same passed to the City of New York under the condemnation proceeding. On December 31, 1933, Walloon Realty Company distributed its entire net assets to petitioner in complete liquidation and was dissolved. Hearings were held in February 1935 before the Supreme Court of Queens County, New York, with respect to the taking for the Grand Central Parkway, for determination of damages for the property taken. On December 4, 1936 that court entered its final decree awarding damages of $171,381.34, together with interest at six per cent from November 2, 1933. No appeal was taken from the decree of the court and, in April 1937, payment of the award was made to petitioner, together with interest in the sum of $35,636.32. The excess of the payment over the cost of the property amounted to $79,564.28, which was included *356 by petitioner in income for the calendar year 1936. In determining the deficiency respondent has included this amount in petitioner's income for the year 1937. With respect to the property taken for Astoria Boulevard, the final decree was entered on November 1, 1937. No appeal was taken and, during January 1938, the amount of the award by the court for this taking in the sum of $38,773, together with interest from November 2, 1933, at six per cent per annum and in the sum of $9,856.24, was paid to petitioner, the total amount exceeding the cost of the property by $17,174.36. Respondent, in determining the deficiency, has included in petitioner's taxable income for the year 1937 this amount of $17,174.36. The Walloon Realty Company as well as petitioner kept its books and filed its returns on the accrual basis of accounting. Opinion It is clear that respondent was correct in including in income for 1937 the gain of $17,174.36, represented by the award and interest under the condemnation of property for Astoria Boulevard. The award of the court determined allowable damage occurred in that year and at the close of the year the amount due was then fixed and determined since more than *357 30 days had elapsed after the entry of the decree and no appeal could then be taken. Sec. 995 Greater New York Charter. As to the Grand Central Parkway property the facts differ only in that the decree of the courts was entered on December 4, 1936 and at the end of that year there were three days left in which the City of New York was entitled to take an appeal. We do not think that this condition precluded the accrual of the gain as of the close of the year 1936. It is beyond question that the amount of the gain could be determined with reasonable certainty on that date. The one fact that petitioner's creditor possessed a legal right for three days longer to contest the amount of the payment, we think, has no bearing. The creditor had not signified any intention of appeal. That none existed in fact is shown by the payment a few days later of the amount of the award. If the mere fact of a legal right to contest payment would preclude accrual there could be no accrual by a creditor of its account receivable since such right would always exist in a debtor prior to payment. The situation here must not be confused with those in which an appeal, if taken, would contest both the liability *358 and the amount awarded. Cf. . Here the liability of the city became fixed in 1933 when it took title to the property. The court proceeding was to determine only the amount. The court there determined that amount on December 4, 1936, upon proof submitted. Thus the conditions existing at the close of the year, namely, a fixed liability to make payment, a determination of the amount of that liability by court decree and a creditor who had made no contest of the amount determined, constituted a sufficient basis for accrual. See ; ; . We think the question here is substantially similar to that presented in a proceeding by this same taxpayer for the year 1938 involving awards made in that year for other property belonging to it and taken by the City of New York. One *359 question, however, raised by respondent on brief, we think has merit. The amount accruable in each instance at the close of the year in which the condemnation award was made would be only the amount then due and owing. This would exclude that portion of the total payment made a few weeks later which represented interest that had accrued upon the award after the close of the year. We accordingly hold that petitioner was entitled to accrue, as of the close of 1936, the amount of the award made in that year for the Grand Central Parkway property, together with interest thereon at six per cent from November 2, 1933, to that date. And, in the case of the Astoria Boulevard property, we hold that petitioner was entitled to accrue, at the close of the year 1937, the award made in that year, together with interest thereon from November 2, 1933, to that date. That portion of the interest paid on these two awards which accrued after the close of those respective years represents, in each instance, income of the year in which such interest accrued. Cf. . Issue 5 Findings of Fact In July 1929 petitioner issued $25,000,000 *360 face amount 5 1/2% Gold Debenture Bonds due July 1, 1950. These bonds were issued under an indenture of trust in which petitioner was given, by Article Four, the right to redeem all or any portion of the bonds at a premium of 3 1/2 per cent of their principal amount by giving the trustee notice not less than 60 days before the redemption date. The trust indenture provided for the deposit by petitioner, within 30 days before the redemption date, of an amount equal to the principal of the bonds to be redeemed, together with interest which would have accrued thereon to the date of redemption, together with the premium payable thereon. It further provided that from and after the designated date of redemption, if petitioner had complied with the specified requirements, the interest upon the bonds should cease and unmatured coupons should become null and void. By Article Six of the indenture of trust it was provided: "The Coke Company shall have the right, at any time, to deposit with the Trustee the amount payable for principal, premium and interest to date of maturity upon all of said bonds then outstanding, and thereupon said bonds and interest coupons shall be treated as paid for *361 the purposes of this Indenture of Trust so far as any liability of the Coke Company thereon or hereunder is concerned. The Trustee shall hold all deposited moneys on special trust for the said bondholders. When such deposit shall have been made with the Trustee by the Coke Company, all rights of the Trustee and of the bondholders hereunder or under such bonds and coupons as against the Coke Company shall cease and determine, and the Trustee, in such event, shall execute, acknowledge and deliver to the Coke Company a proper instrument evidencing the satisfaction and discharge of this Indenture of Trust and of all obligations and liability of the Coke Company hereunder." These bonds were issued at a discount of $1,312.500 and expenses of $60,109.71 were incurred in connection with their issuance. On October 31, 1936 bonds of this issue were outstanding in the amount of $18,712,000, the balance having been theretofore redeemed. On that date petitioner, under the indenture, notified the trustee of its determination to pay and redeem, on January 1, 1937, these outstanding bonds. On November 24, 1936, petitioner deposited with the trustee the amount provided by Article Four of the deed *362 of trust which was the face amount of the bonds plus interest to January 1, 1937, and plus the premium of 3 1/2 per cent. The trustee, upon receipt of this sum, entered the same as a credit in a ledger account "for the holders of Koppers Gas and Coke Company Sinking Fund 5 1/2% Debenture Gold Bonds." The trustee then addressed to the holders of all of these bonds its notice of redemption advising them of petitioner's determination to redeem and pay them on January 1, 1937 and that this payment would be in the principal amount thereof, together with interest accrued to January 1, 1937, and plus a premium of 3 1/2 per cent of the principal amount. On November 24, 1936, upon receipt from petitioner of its deposit required for redemption of the bonds, the trustee executed an instrument cancelling and discharging the indenture, acknowledging receipt of the payment made by petitioner to it as performance in full of all things required under the indenture of trust and certifying that the indenture, bonds and coupons had been fully discharged, paid and satisfied and that the holders of the bonds and coupons and the trustee had no further rights against petitioner. The unamortized discount *363 and expenses connected with the issuance of the bonds thus retired amount to $660,837.12 and the premium paid in connection with redemption amounted to $654,920, or a total of $1,315,757.12. This amount petitioner deducted on its return for the year 1937. Respondent has disallowed this deduction in determining the deficiency, holding that such expenses and premium were accruable as of the close of 1936 and deductible in that year. Opinion If the redemption by petitioner of the outstanding bonds on January 1, 1937 was effected under the provisions of Article Four of the indenture of trust the question would be ruled by our decision in . In that case bonds were to be redeemed in 1920 and deposit of the funds required for paying the principal, interest and premium on the same was made by the obligor in 1919. On these facts we held that the obligation on the bonds was not satisfied until the year 1920 when the bonds were paid and that the deduction for the premium and unamortized discount and expense was proper in the later year. Respondent, on brief, appears to agree with this. Thus his brief reads: "It is *364 true that the facts show the provisions of Article IV had been carried out to the very letter by petitioner and the trustees, and if the parties had taken no further action, there is no doubt that under the Pierce Oil case, supra, the deduction of unamortized bond discount, expenses and premium paid would be proper in 1937." He argues, however, that irrespective of the fact that petitioner's notice for redemption of the bonds prior to maturity, served upon the trustee, stated that the call for redemption was made under Article Four, that the action taken by petitioner in making its deposit with the trustee, as provided by Article Four, also complied fully with the requirements of redemption as provided by Article Six of the trust indenture. From this it is argued that the redemption was in fact made under the provisions of Article Six. In support of this argument it is pointed out that the trustee, upon receipt of the deposit, issued to petitioner the certificate provided by Article Six discharging petitioner from all liability to it or the bondholders under the trust indenture, the bonds and the coupons. It is contended that, under these circumstances, petitioner's liability *365 upon the bonds terminated with this action by the trustee and that since this occurred in 1936, the deduction for premium, unamortized discount, and expense is applicable to that year. We have studied carefully the provisions of Article Six of the trust indenture. It is noted that the requirement for retirement of outstanding bonds thereunder is that there be a deposit of the amount of principal, premium and interest on the bonds to date of maturity. We think it is apparent that this Article is intended to cover the situation where bonds are to be paid off to the bondholder at maturity but where the obligor, for some business reason, desires an immediate release from the obligation of the bond indenture. The redemption of the bonds here did not occur at maturity but prior thereto. Such redemption is covered by Article Four of the trust indenture and the deposit by petitioner complied with the requirements of that Article. It did not comply with the requirements of Article Six, since the amount deposited for interest was only such interest as would accrue up to the redemption date specified. That date was prior to maturity of the bond. It is true that the trustee did execute *366 and deliver to petitioner the certificate as authorized and directed if the requirements of Article Six were complied with. But on the facts here established it seems clear that in so doing it exceeded its authority. The powers of the trustee were expressly set out in the trust indenture, It possessed no power to discharge without petitioner having met the conditions specified by Article Six. That petitioner had complied with the requirements of Article Four was not enough. We hold that the liability of petitioner to the bondholders, under the circumstances, did not terminate under the trust indenture until the retirement of these bonds in 1937 and that the contested deduction in that year for premium, unamortized discount and expense was proper. Issue 6 Findings of Fact On December 29, 1933, the Bexley Company, a wholly owned subsidiary of petitioner, distributed all of its assets to petitioner subject to its liabilities and was dissolved. On November 7, 1936, the Gregory Company, a wholly owned subsidiary of petitioner, distributed its entire assets to petitioner subject to its liabilities and was dissolved. *367 Both of these transactions were of a character in which gain or loss was recognizable to petitioner upon the liquidation. Both the Bexley and Gregory companies, at the time of their liquidation, were liable for income taxes as original taxpayers or were liable as transferees for income tax liabilities assumed upon receipt of assets in prior years from transferor companies. These liabilities of the Gregory and Bexley companies were not known to exist at the time of the liquidation of those companies and were, consequently, not taken into account in determining the taxable gain or deductible loss to petitioner in those liquidations. In subsequent years the liabilities of the Bexley and Gregory companies were determined and were assessed as transferee liabilities of petitioner. After investigation and negotiation, these liabilities were discharged by petitioner in 1937. These liabilities, including interest, aggregated the sum of $215,787.96. The stipulation sets out the amount of each liability in detail, the interest thereon as finally determined and paid by petitioner and the transferor company to which it pertained. Accordingly, it is unnecessary to set out here those facts in detail. *368 Opinion Petitioner claims as a loss, or as a business expense pertaining to 1937, the amount of these several liabilities together with interest thereon paid by it in that year. Petitioner's gain or loss, upon the distribution to it of the assets of the wholly owned Bexley and Gregory companies in their liquidation, was determined without the amount of these liabilities being known. Consequently they were not reflected in that computation. It necessarily follows, we think, that the payments in 1937 discharging those liabilities effected a diminution of capital assets of petitioner in the year of these payments. The question here is identical with that presented in the case of this same taxpayer for another year. . In that case we held, on similar facts, that payments of this character were deductible as losses sustained in the year of payment. On authority of , we hold that the amount paid by petitioner in discharge of its liabilities as transferee, together with so much of the interest paid thereon as is not allowed as interest upon petitioners' indebtedness in our decision *369 upon the first issue herein, constitutes a loss deductible by petitioner in 1937 when paid. Cf. ; , ; . Issue 7 This issue, involving the deduction allowable to petitioner for a loss in its coke inventory in 1937, has been stipulated. Effect will be given thereto in the recomputation of the deficiency. Decision will be entered under Rule 50. Footnotes
1. Revenue Act of 1936, section 23 (b).↩
2. In the taxpayer, as in the case of the petitioner here, was a creditor of the Davison Coke & Iron Company and received similar ten year debentures in the reorganization of that company. In that proceeding we sustained, upon substantially the same evidence of value as here presented, the contention there made by respondent that the bonds in question were worth par when received on February 5, 1936.↩